UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETRA CHRISTINA BETER,

                    Plaintiff,

       -against-

RUPERT MURDOCH, JAMES MURDOCH,
TWENTY-FIRST CENTURY FOX, INC., NEWS
CORPORATION a/k/a NEWS CORP., THE NEW
YORK POST, JOSH MARGOLIN, JOHN DOE,
JANE DOE, and GORDON ZWEIFACH,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __JUN 2 2 2018__

MEMORANDUM DECISION AND
ORDER

17 Civ. 10247 (GBD)

GEORGE B. DANIELS, United States District Judge:

In this action, Plaintiff Petra Christina Beter asserts various causes of action against Defendants stemming from Defendant *The New York Post*'s publication of an Article that Plaintiff alleges is false and defamatory.[1]  (*See* Am. Compl., ECF No. 23.)  Defendant News Corporation a/k/a News Corp. ("News Corp.") is a corporate entity with an ownership interest in *The New York Post.*  (Am. Compl. ¶ 2; Mem. in Supp. of Defs. Mot. to Dismiss ("Mem. in Supp."), ECF No. 63, at 1.) Defendant Twenty-First Century Fox, Inc. is an affiliate of News Corp.[2]  (Am. Compl. ¶¶ 2–3; Mem. in Supp. at 1.)  Defendants Rupert and James Murdoch are directors of News Corp., Defendant Josh Margolin is the reporter who authored the Article, and Defendant Gerson Zweifach is Twenty-First Century Fox's General Counsel.  (Am. Compl. ¶¶ 2–3, 15; Mem. in Supp. at 1.)

---

[1] Plaintiff's Amended Complaint names John and Jane Doe as Defendants, but contains no specific allegations as to either of them.  (*See* Am. Compl.)  Neither has been identified or served with the Amended Complaint.  The term "Defendants" used herein refers to the named, identified Defendants.

[2] Although Plaintiff's Amended Complaint names *The New York Post* as a defendant, *The New York Post* is not a legal entity.  (Mem. in Supp. at 1 n.1.)  New York Post Holdings, Inc., the company that owns *The New York Post*, has entered an appearance on its behalf.  New York Post Holdings, Inc. is, in turn, owned by Defendant News Corp.  (*Id.* at 1.)

Defendants move to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for sanctions against Plaintiff and her attorney pursuant to Rule 11. (ECF Nos. 62, 65.) Plaintiff cross-moves for leave to amend the complaint pursuant to Rule 15 and for sanctions against Defendants and their attorneys. (ECF Nos. 80, 86.) Defendants' motion to dismiss the complaint is GRANTED. Plaintiff's motion for leave to amend the complaint is DENIED as futile. The parties' motions for sanctions are DENIED.

## I.  FACTUAL BACKGROUND

In July 2011, Plaintiff's sister, Josee Beter ("Josee"), anonymously contacted Defendant Margolin and told him she had information about "intimidation and ongoing threats" against Josee and Plaintiff, made by attorneys at Wilkie Farr & Gallagher LLP ("Wilkie Farr") on behalf of Wilkie Farr's client, former New York City Mayor Michael Bloomberg. (Am. Compl. ¶ 53.) Josee told Margolin that Plaintiff had been sexually assaulted by a senior advisor on Bloomberg's campaign, and that other officials connected to the campaign had subjected Plaintiff to cyberstalking and threats of physical harm designed to dissuade Petra from filing a lawsuit relating to the alleged assault. (*Id.* ¶ 54.) Josee also told Margolin that during settlement discussions, an attorney for Wilkie Farr "brought in the US Attorney for the Southern District of New York to contact Petra's attorneys and communicate to them threats of a criminal investigation." (*Id.* ¶ 57.)

Josee had further discussions with Margolin over the ensuing weeks, and disclosed her name and Plaintiff's name to him on August 18, 2011. (*Id.* ¶ 65.) On September 16 and 17, 2011, Margolin met with Plaintiff in Minneapolis. (*Id.* ¶ 67.) After Margolin's meeting with Plaintiff, Margolin and Josee had further discussions through December 2011. (*Id.* ¶ 79.) According to Plaintiff, during the course of their discussions, Margolin made "repeated[] assurances that Petra and Josee could trust him and his editors at *The New York Post* and that standing behind him and

140–144.)  That evening, Gavenchak emailed Josee, "[o]ut of regard for your immediate concern about your sister, the Post is going to remove the [A]rticle from the website nypost.com.  This should not be taken as an agreement by the Post with any of the statements you have made on the issues."  (*Id.* ¶ 145.)  The next day, Gavenchak sent Josee another email confirming that the Article had been removed from the website.  (*Id.* ¶ 146.)

After the Article was removed, Josee asked Gavenchak to contact *The Daily Mail*, which had posted a story on its own website based on the Article, to have *The Daily Mail*'s story removed as well.  (*Id.* ¶ 164.)  According to Plaintiff, *The Daily Mail*'s story remained online until "[*T*]*he Daily Mail* took it down in August of 2012 at the Murdoch[s'] and News Corp. Related Entities['] instructions."[3]  (*Id.* ¶ 165.)

In 2013, Plaintiff retained Miles Feldman of the law firm Raines Feldman LLP, who sent letters to Rupert Murdoch and Zweifach about a potential lawsuit regarding the Article.  (*Id.* ¶¶ 169–70.)  In December 2013, while the parties were engaged in settlement discussions, an investigative reporter from the *Star Tribune*, a Minneapolis newspaper, followed Plaintiff on the social media platform Twitter.[4]  (*Id.* ¶ 172.)  The reporter then immediately followed the Twitter account of Howard Wolfson, who was New York City's Deputy Mayor at the time.  (*Id.* ¶ 173.)  According to Plaintiff, the reporter's actions were "intended to send her a message—to back off of News Corp. lest further damaging articles be released about her in . . . the *Star Tribune*."  (*Id.* ¶¶ 172–74.)

---

[3] The Amended Complaint defines the term "News Corp. Related Entities" to include News Corp., Twenty-First Century Fox, and *The New York Post*.  (Am. Compl. ¶ 3.)

[4] "Twitter is a social networking and micro-blogging service" that allows users to "send and read electronic messages known as 'tweets.'"  *United States v. Feng Ling Liu*, 69 F. Supp. 3d 374, 377 n.1 (S.D.N.Y. 2014) (citation omitted).  "Any Twitter user can sign up to 'follow' any other Twitter user, which means that Twitter will cause the follower to receive all tweets the author publishes."  *Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959, 960 (N.D. Cal. 2016).

Plaintiff also alleges that in January 2014, "Josee was directly intimidated by . . . Anthony Ostlund," an attorney in Minneapolis, "who made it personally known to her that News Corp. had hired [Ostlund] to fight her sister, Petra."   (*Id.* ¶¶ 171, 179.)   Plaintiff alleges that "Zweifach . . . was responsible for the hiring of Anthony Ostlund . . . and he knew, or should have known, of the actions of Anthony Ostlund." (*Id.*)

In 2016, Josee learned that Zweifach had been hired as General Counsel for Twenty-First Century Fox and would be conducting an internal review of former Fox News anchor Gretchen Carlson's allegations of sexual harassment against Fox News CEO Roger Ailes.   (*Id.* ¶ 180.) Plaintiff alleges Zweifach's hiring upset Josee because she "believ[ed] that [Zweifach] was responsible, behind the scenes, for the threats and intimidation tactics against her and Petra, at least regarding Anthony Ostlund." (*Id.* ¶ 181.) Josee emailed James Murdoch's office, stating that she believed Zweifach was "unsuitable to manage the internal review" of Carlson's allegations because "abuse of women is condoned by Mr. Zweifach, even against News Corp.'s own female sources." (*Id.*)

Plaintiff alleges Josee was contacted by attorneys from Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss"), who represented that they were investigating Zweifach and sexual harassment at companies controlled by the Murdochs.  (*Id.* ¶ 182.)  However, according to Plaintiff, Paul Weiss was actually "acting under the instruction of Gerson Zweifach" to "ensure the most effective resolution of any potential threats to the News Corp. Related Entities." (*Id.* ¶ 186.)  Plaintiff further alleges that Paul Weiss provided a journalist with the articles that had been removed from *The New York Post*'s and *The Daily Mail*'s websites "as a means of punishment and payback against Petra and Josee."  (*Id.* ¶ 187.)  According to Plaintiff, the journalist "aggressively and harshly questioned" Josee about both articles, and Josee "was forced, on behalf

of [Plaintiff], to fully explain the entire situation" to the journalist. (*Id.* ¶ 188.)  Plaintiff also alleges that when Josee attempted to engage in further communications with Paul Weiss, she received an email from a Paul Weiss employee "essentially telling [Josee] to be quiet and leave them alone." (*Id.* ¶ 190.)

Plaintiff further alleges that in 2017, Josee, as Plaintiff's representative, was contacted by Ofcom, a communications regulator in the United Kingdom examining a proposed merger between Twenty-First Century Fox and the British media company Sky plc. (*Id.* ¶ 191.)  Josee provided Ofcom with a statement on Plaintiff's behalf. (*Id.*)  Josee's allegations of misconduct by Zweifach and "other agents of Rupert Murdoch" were sent to Karen Bradley, who was then the Secretary of State for Digital, Culture, Media, and Sport in the United Kingdom. (*Id.* ¶ 192.)  Afterward, Plaintiff saw the Article on the website and smartphone application of the media company PressReader. (*Id.* ¶ 195.)  Plaintiff believed that "the reappearance of the [A]rticle was due to [Josee's and Plaintiff's] statements to Ofcom, and to the office of Karen Bradley issued in an effort to intimidate her and discredit [Josee] and Petra before the U.K. regulators." (*Id.* ¶ 196.)

Plaintiff alleges that the publication of the Article "destroyed Petra's privacy and her reputation" and "any hopes that Petra had of returning to New York City to resume her career" as a photographer.[5] (*Id.* ¶¶ 147, 152.)  Plaintiff alleges that "[d]ue to all that had occurred to her, Plaintiff was forced to give up . . . a multitude of professional connections and important relationships . . . which had great professional and financial value to her, as well as friends which had great personal and emotional value to her." (*Id.* ¶ 148; *see also id.* ¶ 162.)  Plaintiff also alleges

---

[5] Although Plaintiff's Amended Complaint does not explain when or why Plaintiff left New York City, a draft of a complaint by Plaintiff against Bloomberg and others alleges "[t]he Beters feared for their lives and went into hiding in or around June 2009.  They feared the defendants [in that potential action] would target them because of the upcoming deposition of . . . Bloomberg in a[] . . . discrimination suit." (Am. Compl., Ex. C, ECF No. 23-8, ¶ 25.)

that she was "deprived of other property rights, including without limitation her right to sue Michael Bloomberg . . . and others . . . as well as the U.S. Attorney's [O]ffice [for] the Southern District of New York." (*Id.* ¶ 157.)

Plaintiff further alleges that the publication of the Article was part of a "scheme to defraud Petra by deceiving her into providing [Defendants] with information and then defraud [Plaintiff] by manufacturing and spreading false news articles attacking Petra's name and reputation." (*Id.* ¶ 158.)   Plaintiff alleges that these articles were "relied upon by others, including, without limitation, Petra's business associates, directly causing financial damages to Petra and otherwise depriving her of money and property." (*Id.*)

## II.    LEGAL STANDARDS

In deciding a motion to dismiss under Rule 12(b)(6), a court "accept[s] all factual allegations in the complaint as true . . . and draw[s] all reasonable inferences" in favor of the plaintiff. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)).   To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding such a motion, the district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court then considers whether plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targam v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013).

7

### III.    PLAINTIFF'S RICO CLAIMS FAIL

Plaintiff asserts claims for conspiracy to violate, and substantive violation of, the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. (Am. Compl. ¶¶ 199–220.)   In addition to "arm[ing] the United States with the authority to initiate criminal and civil proceedings to enforce RICO, Congress . . . created . . . a private right of action for '[a]ny person injured in his business or property by a violation of [RICO's substantive provision].'"   *RJR Nabisco, Inc. v. European Cmty*, 136 S. Ct. 2090, 2112 (2016) (quoting 18 U.S.C. § 1964(c)) (alterations in original).   RICO also makes it "unlawful for any person to conspire to violate" the substantive provisions of the statute.  18 U.S.C. § 1962(d).

#### A.  Plaintiff's RICO Claims Are Time-Barred

The statute of limitations for both substantive RICO and RICO conspiracy claims is four years, which "begins to run 'when the plaintiff discovers or should have discovered the RICO injury.'"   *Cohen v. SAC Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (citation omitted) (substantive claim); *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 530 (S.D.N.Y. 2007) (conspiracy claim).   There is an exception to the four-year statue of limitations known as the "'separate accrual' rule," under which "a new claim accrues, triggering a new four-year limitations period, each time [a] plaintiff discovers, or should have discovered, a new injury caused by the predicate RICO violations."   *Bingham v. Zolt*, 66 F.3d 553, 569 (2d Cir. 1995). However, for the "separate accrual" rule to apply, the injury must be "new and independent."  *Id.* at 561.   The injury must also be "caused by the same defendant[s]" involved in the original RICO violations. *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 558 (S.D.N.Y. 2014).   "Conclusory allegations" that "do not specify how racketeering activities caused [the plaintiff's] damages" are insufficient. *Hollander v. Flash Dancers Topless Club*, 173 F. App'x 15, 18 (2d Cir. 2006).

All of the injuries Plaintiff alleges occurred upon or shortly after the publication of the Article, which occurred on January 3, 2012. (Am. Compl. ¶ 85.)  Because Plaintiff did not file this action until December 31, 2017 (*see* Compl., ECF No. 1), her RICO claims are untimely.

Plaintiff attempts to avoid the statute of limitations by alleging that the Article was "republish[ed]" on the website and smartphone application of the media company PressReader in 2017. (Mem. in Opp'n to Defs. Mot. to Dismiss ("Opp'n"), ECF No. 78, at 2; *see also* Am. Compl. ¶¶ 37, 195.)  But the alleged republication of the Article does not provide a basis for Plaintiff to invoke the "separate accrual" rule to save her claims. *Bingham*, 66 F.3d at 569. Although Plaintiff alleges that the "reappearance of the Article was . . . an effort to intimidate [Plaintiff] and discredit her," (Am. Compl. ¶ 196), Plaintiff has not alleged that she suffered any concrete injury—let alone a "new and independent" injury—from the republication. *Bingham*, 66 F.3d at 561.

Moreover, even if the republication of the Article caused Plaintiff some injury, Plaintiff has not shown that injury was caused by Defendants.  PressReader is not named as a defendant in this action.   The Amended Complaint attempts to connect the named Defendants to the republication by alleging that it is "part of a pattern by Twenty-First Century Fox, News Corp., the Murdochs, and Gerson Zweifach of threatening, intimidating, and discrediting anyone who might pose a risk to them by exposing their misdeeds and corporate governance failings."  (Am. Compl. ¶ 196.)  But such a "conclusory allegation," devoid of "specific facts" demonstrating how Defendants were involved in the republication, cannot establish proximate causation for purposes of RICO. *Hollander*, 173 F. App'x at 18.

## B.  Plaintiff Lacks Standing to Assert RICO Claims

Even if Plaintiff's RICO claims were not untimely, Plaintiff would lack standing to assert them.  To have standing to bring a civil RICO claim, "the plaintiff must allege . . . an injury to

business or property." *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 903–04 (2d Cir. 1996). "[C]onclusory allegations of injury to pecuniary interest" will not suffice. *Paris Partners, L.P. v. Russo*, No. 94 Civ. 5684 (PKL), 1995 WL 746585, at *2 (S.D.N.Y. Dec. 14, 1995). Rather, "a showing of 'injury' requires proof of *concrete financial loss*." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008) (emphasis added) (quoting *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc)), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). Thus "a mere 'expectation' [of pecuniary harm] cannot constitute 'business or property' under RICO." *Villoido v. BNP Paribas S.A.*, 648 F. App'x 53, 54 (2d Cir. 2016) (citation omitted). Additionally, "[g]eneralized reputational harms . . . including the risk of future lost business commissions, are too speculative to constitute an injury to business or property." *Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14, 16 (2d Cir. 2006) (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir .1990)); *see also Mack v. Parker Jewish Inst. for Health Care & Rehabilitation*, No. 14 Civ. 1299 (LDW) (E.D.N.Y. Oct. 30, 2014) (allegations that plaintiff "has not been able to find employment reflective of her level of education and experience . . . are too speculative to constitute an injury to business or property"). "Moreover, the deprivation of constitutional rights," including "rights to file suit and to due process of law [is] . . . personal in nature and cannot provide the requisite injury to bring a RICO suit." *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 613 (S.D.N.Y. 2015) (quoting *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1085–86 (C.D. Cal. 2009)) (internal quotation marks omitted).

Here, none of the injuries Plaintiff alleges are cognizable under RICO. Plaintiff's allegation that the Article harmed her "privacy and her reputation" and her "professional connections and important relationships," (Am. Compl. ¶¶ 147–48), refer to "[g]eneralized

reputational harms" that are "too speculative to constitute an injury to business or property." *Kimm*, 196 F. App'x at 16.  Her allegation that, prior to the publication of the Article, she had "hopes of returning to New York City to resume her career," (Am. Compl. ¶ 152), is also speculative. *Mack*, 2014 WL 5529746, at *5.  Plaintiff's allegation that she has been deprived of her right to file suit against Bloomberg and others, (*Id.* ¶ 157), is "personal in nature" and, as such, also fails to "provide the requisite injury to bring a RICO suit." *Astorino*, 137 F. Supp. 3d at 613. Plaintiff's vague allegations that she has been "depriv[ed] . . . of money and property," (Am. Compl. ¶ 158), are conclusory and fail to establish a concrete injury. *Paris Partners, L.P.*, 1995 WL 746585, at *2.  Absent a cognizable injury, Plaintiff lacks standing to assert her RICO claims.

### C. Plaintiff's RICO Claims Fail on The Merits

Separate and apart from their procedural deficiencies, Plaintiff's RICO claims fail on their merits, because Plaintiff has failed to establish the existence of a RICO enterprise. "RICO imposes liability on individuals working for an 'enterprise' that commits certain predicate crimes that amount to a 'pattern of racketeering activity.'" *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (citation omitted). "[A]n enterprise includes any union or group of individuals associated in fact . . . for a common purpose of engaging in a course of conduct" and "is proved by . . . evidence that the various associates function as a continuing unit." *Boyle v. United States*, 556 U.S. 938, 944–45 (2009). "The enterprise must also exist 'separate and apart from the pattern of activity in which it engages.'" *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 667–68 (2d Cir. 2014) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

"[A]llegations of the RICO defendants' common purpose" that are "little more than a 'naked assertion' devoid of 'further factual enhancement'" are insufficient. *D. Penguin Bros.*, 587 F. App'x at 668 (quoting *Iqbal*, 556 U.S. at 678).  Where a plaintiff "fail[s] to provide . . . any

11

solid information regarding the 'hierarchy, organization, and activities of [an] alleged association in fact'" and "fail[s] to explain each participant's role in the alleged course of fraudulent or illegal conduct," there is "no basis to support the conclusion that [the individuals] were 'associated together for a common purpose of engaging in a course of conduct.'" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (citation omitted); *see also BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014) (where plaintiff fails to allege "the roles each Defendant played and the actions they took," there is no "information from which it could be concluded that Defendants function as a unit or that they shared a common purpose").

Here, Plaintiff alleges that Defendants had a "common purpose to secure the growth of the News Corp. Related Entities, and increase the power of the Murdochs over, and via the same." (Am. Compl. ¶ 204.)  Plaintiff further alleges that "[i]f any of th[e] Defendants could be termed the ringleader[] of said RICO enterprise . . . it would be Defendant Rupert Murdoch." (*Id.* ¶ 202.) But Plaintiff's complaint does not contain any allegations of specific actions Rupert Murdoch took or explain why he should be characterized as a ringleader.  Nor does Plaintiff otherwise provide "solid information regarding the hierarchy, organization, and activities" of the enterprise.  *First Capital*, 385 F. 3d at 174.  Because Plaintiff has failed to provide "information from which it could be concluded that Defendants function as a unit or that they shared a common purpose," *BWP Media*, 69 F. Supp. 3d at 360, she has failed to plead the existence of a RICO enterprise, which is fatal to her substantive RICO claim.  *D. Penguin Bros.*, 587 F. App'x at 669.  "[T]he failure to state a claim for a substantive RICO violation, moreover, is fatal to [Plaintiff's] RICO conspiracy claim." *Id.*

## IV.   PLAINTIFF'S STATE LAW CLAIMS FAIL

In addition to her RICO claims, Plaintiff brings state law claims for fraud, civil conspiracy to defraud, breach of contract, and injunctive relief, which are premised on diversity jurisdiction. (*See* Am. Compl. ¶¶ 5, 221–38.)  Plaintiff argues that Minnesota law applies to her state law claims (*see* Opp'n at 12–18), while Defendants argue that New York law applies.  (Mem. in Supp. at 16.)

"Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015) (quoting *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1996)).  Under New York choice-of-law rules, the court first considers whether "the laws of the competing jurisdictions are actually in conflict." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (citation omitted).  "In the absence of a substantive difference . . . if New York law is among the relevant choices, New York courts are free to apply it."[6]  *Id.* (citations omitted).  Here, although Plaintiff argues that Minnesota law should apply to her claims, Plaintiff does not identify any meaningful difference between the laws of New York and Minnesota. (*See* Opp'n at 12–19.)  Thus, this Court will apply New York law.

"In determining the appropriate statute of limitations, the New York courts 'look for the reality, and the essence of the action and not its mere name.'" *Okure v. Owens*, 816 F.2d 45, 50 (2d Cir. 1987) (quoting *Morrison v. Nat'l Broad. Co.*, 227 N.E.2d 572, 575 (N.Y. 1967)).  "New York courts have 'kept a watchful eye for claims sounding in defamation that have been disguised as other causes of action.'" *Abshier v. Sunset Recordings, Inc.*, No. 14 Civ. 3227 (CM) (SN), 2014 WL 4230124, at *9 (S.D.N.Y. Aug. 5, 2014) (quoting *Lesesne v. Brimecome*, 918 F. Supp. 2d 221,

---

[6] Even if there is a conflict between the laws of the two states, a court may "decline to make a choice of law determination at the motion to dismiss stage" because "a choice of law analysis is fact intensive." *Lightsquared Inc. v. Deere & Co.*, Nos. 13 Civ. 8157 (RMB), 13 Civ. 5543 (RMB), 2015 WL 585655, at *9 (S.D.N.Y. Feb. 5, 2015).

224 (S.D.N.Y. 2013)).  When a plaintiff's claims "all involve the same allegedly false and

defamatory statements, and all seek damages for injury to reputation, . . . regardless of the terms

in which a cause of action may be cast, the one-year limitations period for libel and slander

applies." [7]  *Torres v. CBS News*, 879 F. Supp. 309, 316 (S.D.N.Y.), *aff'd sub nom. Torres v.*

*Schumer*, 71 F.3d 406 (2d Cir. 1995).

Here, Plaintiff's state law claims—for breach of contract, fraud, conspiracy to defraud, and

injunctive relief (*see* Am. Compl. ¶¶ 221–38)—sound in defamation, as they all "involve the same

allegedly false and defamatory statements," *i.e.*, the statements in the Article. *Torres*, 879 F. Supp.

at 316.  As to breach of contract, Plaintiff alleges that a "contract was formed when Defendant

Margolin agreed . . . to protect Petra Beter's confidentiality in exchange for her information," that

Plaintiff provided the information in interviews with Margolin over a two-day period in Minnesota,

and that "Margolin and News Corp. breached the contract by using her information and name in a

story without her consent."  (Opp'n at 14; *see also* Am. Compl. ¶¶ 47(c), 230.)  In support of her

claims for fraud and conspiracy to defraud, Plaintiff alleges that Defendants engaged in a "scheme

to defraud Petra by deceiving her into providing them with information . . . and then defraud

[Plaintiff] by manufacturing and spreading false news articles attacking Petra's name and

reputation." (Am. Compl. ¶ 158.)  Specifically, Plaintiff alleges she was deceived when "Margolin

and [*T*]*he New York Post*" made a false "promise . . . of Rupert Murdoch's protection of [Plaintiff]"

and Margolin falsely promised Plaintiff not "to do anything with the story until [Plaintiff] tells him

she agrees to any of it."  (*Id.* ¶¶ 48, 128.)  Third, the injunctive relief Plaintiff requests is that

---

[7] Minnesota, like New York, applies the statute of limitations for defamation claims to tort claims that sound
in defamation. *See Wild v. Rarig*, 234 N.W.2d 775, 793 (Minn. 1975) (finding plaintiff's "claim of wrongful
interference with business relationships by means of defamation is essentially a part of his cause of action
for defamation and consequently comes within . . . the 2-year statute of limitations" for such claims).  Even
under Minnesota's two-year statute of limitations, *see* Minn. Stat. § 541.07(1), Plaintiff's claims would still
be time-barred.

Defendants "be prohibited from publishing the [A]rticle . . . or anything relaying the information published in the Article." (*Id.* ¶ 238.) As in the discussion of Plaintiff's RICO claims, all of Plaintiff's claimed damages flow from injuries to her reputation. Thus, Plaintiff's claims are subject to the statute of limitations for defamation claims. *See Torres*, 879 F. Supp. at 316. Because Plaintiff alleges that the Article was published on January 3, 2012, (Am. Compl. ¶ 85), and this action was filed on December 31, 2017, Plaintiff's state law claims are time-barred. (Compl.)

Even if Plaintiff's state law claims were not time-barred, all three would fail on their merits. First, Plaintiff's breach of contract claim fails because the terms of the contract alleged in the Amended Complaint do not include its duration. Under New York law, "[a]bsent a fixed or determinable duration or an express provision that the duration is perpetual, the contract is one terminable at will." *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 607 F. Supp. 2d 600, 603 (S.D.N.Y. 2009) (quoting *Ketcham v. Hall Syndicate, Inc.*, 236 N.Y.S.2d 206, 212 (Sup. Ct. N.Y. Cnty. 1962)). Thus, Margolin was free to terminate the contract by disclosing Plaintiff's name in the Article, and Plaintiff cannot establish the contract was breached.[8]

Second, none of the promises alleged in the Amended Complaint can form the basis of a fraud claim. To the extent Plaintiff's fraud claims are premised on Margolin's alleged promise of confidentiality, they are duplicative of her breach of contract claim. *See Bayerische Landesbank*

---

[8] It is unclear whether the alleged contract was oral or written. (*Compare* Am. Compl. ¶ 47(c) ( "Josh Margolin's guarantee to Petra and Josee of confidentiality and anonymity and promise to Petra that her name would never be published by the New York Post in any story . . . are both in writing" and made orally at a "meeting between Petra and Josh Margolin"), *with id.* ¶ 230 ("Defendants breached their *oral agreement* with Plaintiff[]." (emphasis added).). To the extent it was oral, the contract is also void under the statute of frauds because it is of indefinite duration. *See Bonsey v. Kates*, No. 13 Civ. 2708 RWS, 2013 WL 4494678, at *7 (S.D.N.Y. Aug. 21, 2013) (noting that where an "oral agreement between the parties call[s] for performance of an indefinite duration and [can] only be terminated within one year by its breach during that period," it is void under the Statute of Frauds).

*v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) ("If . . . the basis of a party's claim is a breach of solely contractual obligations, . . . the claim is precluded as duplicative."). Plaintiff alleges in opposition to the motion to dismiss that "[u]pon publication of the story, it became evident that neither Defendant Margolin nor News Corp. ever had any intention of honoring their promise of confidentiality to [Plaintiff]." (Opp'n at 13.) But this conclusory allegation cannot save her claim. While a fraud claim may be based on a "promise made with a preconceived and undisclosed intention of not performing it," to bring such a claim, "a plaintiff must set forth *specific facts* indicating that the promisor never intended to honor his or her obligations at the time the promise was made." *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 Civ. 8205 (RWS), 2013 WL 3943267, at \*11 (S.D.N.Y. July 31, 2013) (emphasis added). No such facts have been alleged here.

Margolin's alleged promise of "Rupert Murdoch's protection," (Am. Compl. ¶ 48), is "too vague to have been justifiably relied on." *Dabriel, Inc. v. First Paradise Theaters Corp.*, 952 N.Y.S.2d 506, 511 (App. Div. 1st Dep't 2012); *see also Yedvarb v. Yedvarb*, 655 N.Y.S.2d 84, 85 (App. Div. 2d Dep't 1997) ("[T]he alleged promise by the defendant to 'always take care of' the plaintiff . . . was too vague to spell out a meaningful promise.").

Margolin's promise that he would not "do anything with the story" unless Plaintiff agreed, (Am. Compl. ¶ 128), cannot form the basis for a fraud claim because "[t]he failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform at the time the promise was made." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994). Because Plaintiff has neither alleged Margolin did not intend to perform his promise nor alleged any specific facts indicating such an intent, Margolin's promise not to "do anything with the story," (Am. Compl. ¶ 128), cannot form the basis for a fraud claim.

16

Third, Plaintiff is not entitled to the injunctive relief she seeks. Plaintiff seeks an injunction "obligating [Defendants] to remove the . . . [A]rticle from [*T*]*he New York Post* from the [I]nternet." (Am. Compl. ¶ 236)  However, the Article has been removed from both *The New York Post*'s website and from PressReader, (Am. Compl. ¶¶ 146, Decl. of Linda Goldstein dated Mar. 23, 2018, Ex. 2, ECF No. 67-2, at 16), and Plaintiff does not identify any other websites on which the Article has been published. Because Plaintiff has "obtained the relief [s]he sought," her request is moot. *Hunter v. Colonial Park Superintendent*, 409 F. App'x 411, 411–12 (2d Cir. 2011) (citing *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996)).  Plaintiff also seeks an injunction prohibiting Defendants "from publishing the [A]rticle . . . or anything relaying the information published in the Article." (Am. Compl. ¶ 238.)  But such an order "forbidding certain communications when issued in advance of the time that such communications are to occur" would constitute a "prior restraint." *Alexander v. United States*, 509 U.S. 544, 550 (1993).  "Any prior restraint on expression comes . . . with a heavy presumption against its constitutional validity," and the moving party "carries a heavy burden of showing justification[.]" *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008) (quoting *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971)). Because Plaintiff alleges no facts as to why such relief would be justified here, no prior restraint is warranted.

## V.   LEAVE TO AMEND WOULD BE FUTILE

"Under Rule 15(a), leave to amend a complaint should be 'freely given when justice so requires.'  However, it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) (quoting Fed. R. Civ. P. 15(a)).  "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss" on the merits. *F5 Capital v. Pappas*, 856 F.3d 61, 88 (2d Cir. 2017); *see also*

*Becnel v. Deutsche Bank, AG*, 507 F. App'x 71, 73 (2d Cir. 2013) (finding amendment "futile because [a party's] claims would be time-barred").

Generally, "[i]n order to meet the requirements of particularity in a motion to amend, 'a complete copy of the proposed amended complaint must accompany the motion so that both the [c]ourt and opposing parties can understand the exact changes sought.'" *Segatt v. GSI Holding Corp.*, No. 07 Civ. 11413 (WHP), 2008 WL 4865033, at *4 (S.D.N.Y. Nov. 3, 2008) (quoting *Zito v. Leasecomm Corp.*, No. 02 Civ. 8072 (GEL), 2004 WL 2211650, at *25 (S.D.N.Y. Sept. 30, 2004)). While "the failure to file a proposed amended complaint is not fatal where there is no undue prejudice to defendant," *Segatt*, 2008 WL 4865033, at *4 (citation and internal quotation marks omitted), leave to amend may be denied where a plaintiff "does not attach a proposed second amended complaint or explain how she will further attempt to cure her pleading." *Parker v. Riggio*, No. 10 Civ. 9504 (LLS), 2012 WL 3240837, at *9 (S.D.N.Y. Aug. 6, 2012).

Here, Plaintiff has not attached a proposed amended pleading to her motion. Plaintiff's memorandum of law suggests she may be able to provide additional details as to the facts surrounding her RICO claims. (*See* Opp'n at 4 (asserting that an email Margolin sent to Plaintiff and Josee on January 2, 2012 "in an attempt to lull them into a false sense of security with regards to the substance of the [A]rticle . . . will be submitted as part of the Second Amended Complaint"); *id.* at 10 (asserting an amended pleading could provide "more definition as . . . [to] what Plaintiff claims to be the 'something of value' which . . . might have been exchanged between the Defendants and sitting government officials").) However, such amendments would be futile because, as explained above, Plaintiff's failure to allege a cognizable injury deprives her of standing to assert those claims, and Plaintiff has still failed to allege the existence of a RICO enterprise.

18

Plaintiff's memorandum of law does not propose any specific amendments to her existing state law claims.  In any event, such amendments would be futile, as Plaintiff has made no attempt to explain why those claims are not time-barred.  *See Becnel*, 507 F. App'x at 73.

Plaintiff's motion for leave to amend is DENIED.

## VI.   SANCTIONS ARE NOT WARRANTED

Under Rule 11, "[s]anctions may—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012).  "Even if a district court identifies a Rule 11 violation, the decision whether to impose a sanction is 'committed to the district court's discretion.'" *McBurnie v. Rutledge*, 646 F. App'x 108, 113 (2d Cir. 2016) "[S]anctions should be imposed with caution," *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 88 (2d Cir. 1998), and "should be reserved for extreme cases." *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 33 (2d Cir. 2017); *see also E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178 (S.D.N.Y. 2008) ("Courts may issue Rule 11 sanctions only in extraordinary circumstances.").  "With respect to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (citation omitted).

Here, Plaintiff and Defendants each argue that the other party knowingly presented false factual allegations regarding PressReader's republication of the Article.  (Mem. in Supp. of Defs. Motion for Sanctions, ECF No. 66, at 1; Mem. in Opp'n to Defs. Mot. for Sanctions ("Pl. Sanctions Mem."), ECF No. 88, at 3.)  Plaintiff also argues Defendants' characterization of PressReader as a "neutral third party" and of Plaintiff's counsel as "philosophically opposed to Rule 11" were made with knowledge that they were false. (Pl. Sanctions Mem. at 3–4, 13–14.)  However, because the factual contentions made by the parties were not "utterly lacking in support," *Street Easy, Inc.*,

19

752 F.3d at 307, and no "extraordinary circumstances" have been shown by either party, this Court declines to impose sanctions. *E. Gluck Corp.*, 252 F.R.D. at 178.

## VII.   CONCLUSION

Defendants' motion to dismiss the Amended Complaint, (ECF No. 62), is GRANTED. Plaintiff's motion for leave to amend the complaint, (ECF No. 80), is DENIED. The parties' motions for sanctions, (ECF Nos. 65, 86), are DENIED.


Dated: New York, New York
        June 22, 2018


                              SO ORDERED.


                              GEORGE B. DANIELS
                              United States District Judge

20